# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Case No. 15-cv-62071-BLOOM/Valle

LIVINGSTON MANNERS,

      Plaintiff,

v.

OFFICER RONALD CANNELLA,
OFFICER KARRIE SABILLON,
OFFICER PAUL SCHEEL, and
CITY OF FORT LAUDERDALE,

      Defendants.

_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Motions for Summary Judgment filed by Defendants Officers Ronald Cannella ("Cannella") and Karrie Sabillon ("Sabillon") (collectively, "Officer Defendants"), ECF No. [58], and Defendant City of Fort Lauderdale ("City"), ECF No. [60] (collectively, the "Motions").[1]  The Court has carefully reviewed the Motions, the record, all supporting and opposing filings, the exhibits attached thereto, and is otherwise fully advised in the premises.  For the reasons that follow, the Motions for Summary Judgment are granted.

### I.    BACKGROUND

Plaintiff Livingston Manners' ("Plaintiff") claims against Defendants stem from events that occurred on the night of June 24, 2014.  That night, at approximately 2:30 a.m., Plaintiff was parked in a swale in front of the residence of Sylvester Petes ("Petes"), waiting to pick Petes up

---

[1] The Court dismissed Defendant Officer Paul Scheel from these proceedings on August 25, 2016.  *See* ECF No. [48]. Officer Defendants have additionally adopted the arguments made by City in its Motion for Summary Judgment.  *See* ECF No. [61].

for work.  *See* ECF Nos. [60] ¶¶ 1-23 ("City's Facts") ¶ 1; [81] ("Plaintiff's Additional Facts") ¶ 1 (collectively, "Undisputed Facts")[2]; *see also* ECF Nos. [57] ("Officers' Facts") ¶ 1; [70] ("Plaintiff's Facts") ¶ 1 (collectively, "Officers' and Plaintiff's Facts").  Cannella was patrolling the area due to recent thefts in the neighborhood.  *See* Undisputed Facts ¶ 3.  Plaintiff's vehicle was the only vehicle on the street.  *See id.* ¶ 2.  After spotting Plaintiff's vehicle, Cannella continued driving straight through an intersection.  *Id.* ¶ 4.  Cannella states that he then observed Plaintiff turn left onto 26th Avenue without fully stopping at a stop sign. Cannella turned around and positioned himself behind Plaintiff's vehicle to conduct a traffic stop.  *See id.* ¶¶ 6-7; Officers' Facts ¶ 12.  Plaintiff saw Cannella and began to drive slowly down 26th Avenue because he knew Cannella "was going to come."  Undisputed Facts ¶ 8.  Cannella activated his lights and sirens to execute a traffic stop, but Plaintiff did not immediately pull over.  *See id.* ¶¶ 9, 12.  Instead, Plaintiff "traveled for two or three minutes," and "drove right through" the intersection at Pembroke Road and 26th Avenue as the light turned green, pulling into a gas station and stopping at the second pump.  *Id.* ¶¶ 13, 14; *see* Officers' and Plaintiff's Facts ¶ 15. Once stopped, Cannella approached Plaintiff's driver side window and, upon request, Plaintiff handed Cannella his license.  *See* Undisputed Facts ¶ 15.  Plaintiff then exited his vehicle.  *See id.* ¶ 16. The parties dispute whether Cannella informed Plaintiff that he was under arrest, but do not dispute that when Cannella attempted to restrain Plaintiff, Plaintiff pulled away from Cannella and leaned back into his vehicle.  *See id.* ¶¶ 18, 19.  Cannella then pulled Plaintiff out of his vehicle.  *See* Officers' and Plaintiff's Facts ¶ 32.  A physical altercation ensued; Cannella claims that he attempted to handcuff Plaintiff, while Plaintiff states that he surrendered to

---

[2] Plaintiff has submitted two statements of facts in response to both motions for summary judgment.  As Officer Defendants have adopted the arguments made in City's Motion for Summary Judgment, the Court refers to City's Facts and Plaintiff's Additional Facts unless otherwise indicated.  Both sets of Plaintiff's facts contain an additional 27 facts, unaddressed by Defendants.

Cannella. *See* Undisputed Facts ¶ 20. Plaintiff is 6'2" and 240 pounds, while Cannella is 5'10" and 215 pounds. *See id.* ¶ 21. At the beginning of the altercation, Cannella brought Plaintiff to the ground, with Plaintiff landing on his back and Cannella landing on top of him. *See* Officers' and Plaintiff's Facts ¶ 35. Throughout the struggle, Cannella punched Plaintiff at least six or seven times and, at one point, Plaintiff held Cannella's wrists. *See id.* ¶ 37; Undisputed Facts ¶ 22. Plaintiff's arrest was only effectuated after Sabillon and other officers arrived on the scene, and Sabillon and Cannella deployed their Tasers. *See* Undisputed Facts ¶ 23; Officers' and Plaintiff's Facts ¶¶ 45-47. Plaintiff was initially charged with attempted homicide, resisting arrest with violence, and battery on a law enforcement officer. *See* Undisputed Facts ¶ 23.

Plaintiff was acquitted of all charges brought against him in state court. *See* ECF No. [35] ("Second Amended Complaint") ¶ 62. He now brings claims against Cannella under 42 U.S.C. § 1983 for excessive use of force and malicious prosecution (Counts I and IV), against Sabillon under 42 U.S.C. § 1983 for excessive use of force (Count II), and against City for false arrest (Count V). *See* Second Amended Complaint. Officer Defendants and City filed their respective Motions on September 6 and 16, 2016. *See* ECF Nos. [58] and [60]. Plaintiff's Responses, and Defendants' Replies, timely followed. *See* ECF Nos. [71], [78], [80], [87].

## II.   LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including, *inter alia*, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F. 3d 1235, 1243

(11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).  A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48).  The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the party's favor.  *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.  The Court does not weigh conflicting evidence.  *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact.  *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).  If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'"  *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'"  *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor.  *Shiver*, 549 F.3d at 1343.  But even where an opposing party neglects to submit any alleged material facts in controversy, a court cannot grant summary judgment unless it is satisfied that all of the evidence on the record supports the uncontroverted

4

material facts that the movant has proposed.  *See Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004).

## III.  DISCUSSION

Officer Defendants move for summary judgment on the basis of qualified immunity. City moves for summary judgment, asserting probable cause as a complete defense.  The Court addresses Defendants' arguments in turn.

### A.   Qualified Immunity

"Qualified immunity . . . offers complete protection for individual government officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Hill v. Cundiff*, 797 F.3d 948, 978 (11th Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "This formulation of the qualified immunity inquiry is intended to protect government officials 'from undue interference with their duties and from potentially disabling threats of liability.'"  *Jordan v. Doe*, 38 F.3d 1559, 1565 (11th Cir. 1994) (quoting *Harlow*, 457 U.S. at 806); *see also Jackson v. Humphrey*, 776 F.3d 1232, 1241-42 (11th Cir. 2015) ("The purpose for qualified immunity is to permit officials to act without fear of harassing litigation as long as they can reasonably anticipate before they act whether their conduct will expose them to liability.").  "Qualified immunity is an immunity from suit rather than a mere defense from liability," *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007), and "[e]ntitlement to immunity is the rule, rather than the exception."  *Samarco v. Neumann*, 44 F. Supp. 2d 1276, 1291 (S.D. Fla. 1999) (citing *Lassiter v. Alabama A & M Univ., Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994) *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002) ("That qualified

immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their individual capacities.")).  "'For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel . . . the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances*.'"  *McMillian v. Johnson*, 88 F.3d 1554, 1562 (11th Cir.), *opinion amended on reh'g*, 101 F.3d 1363 (11th Cir. 1996) (emphasis in original) (quoting *Lassiter*, 28 F.3d at 1150).

### 1.    Discretionary Authority

To enjoy qualified immunity, Officer Defendants must first establish that they acted within their discretionary authority during the incident in question.  *See Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009); *see also O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004) ("To be even potentially eligible for qualified immunity, the official has the burden of establishing that he was acting within the scope of his discretionary authority.") (citation omitted).  "A government official proves that he acted within the purview of his discretionary authority by showing 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.'"  *Hutton v. Strickland*, 919 F.2d 1531, 1537 (11th Cir. 1990) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)).  As cautioned by the Eleventh Circuit, "[i]nstead of focusing on whether the acts in question involved the exercise of actual discretion," a court must "assess whether they are of a type that fell within the employee's job responsibilities."  *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).  This requires the court to "ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to

utilize." *Id.* (citing *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1185 n.17 (11th Cir. 1994)). As to the first prong, a court must look to the "general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Id.* at 1266. Put another way, a court asks whether a defendant was "performing a function that, *but for* the alleged constitutional infirmity, would have fallen within his legitimate job description." *Id.* (emphasis in the original).

As police officers, Officer Defendants clearly had the authority to seize and arrest Plaintiff. In addition, the creation of a probable cause affidavit falls within Cannella's "legitimate job-related function[s]." *Holloman*, 370 F.3d at 1265. Plaintiff does not argue that Officer Defendants acted beyond the scope of their discretionary authority. Accordingly, the burden shifts to Plaintiff to show that qualified immunity should not apply because (1) Officer Defendants violated his constitutional right(s); and (2) the right(s) was clearly established at the time of the incident. *See id.* at 1267; *Randall v. Scott*, 610 F.3d 701, 715 (11th Cir. 2010).

### 2.   *Plaintiff's clearly established constitutional rights*

The Fourth Amendment affords Plaintiff the constitutional right to be free from an unreasonable search and seizure. *See Tennessee v. Garner*, 471 U.S. 1, 7 (1985). Under established precedent, "*all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Accordingly, to show that qualified immunity does not apply because Officer Defendants used excessive force, Plaintiff must establish "(1) that a seizure occurred; and (2) that the force used to effect the seizure was unreasonable." *Troupe v. Sarasota*

*Cty., Fla.*, 419 F.3d 1160, 1166 (11th Cir. 2005) (citing *Evans v. Hightower*, 117 F.3d 1318, 1320 (11th Cir. 1997)); *see also Graham*, 490 U.S. at 394 (citing *Garner*, 471 U.S. at 7-22). Plaintiff has established that a seizure occurred.  *See Brower v. County of Inyo*, 489 U.S. 593, 596–97 (1989) (a seizure occurs "when there is a governmental termination of freedom of movement through means intentionally applied.").  The question before the Court, therefore, is whether Plaintiff has sufficiently established that a reasonable jury could determine that Officer Defendants used unreasonable force to effect the seizure.  *See Troupe*, 419 F.3d at 1166.

> a.    The arrest

"When an officer lawfully arrests an individual for the commission of a crime, no matter how minor the offense, the officer is entitled under controlling Supreme Court precedent to effectuate a full custodial arrest."  *Lee v. Ferraro*, 284 F.3d 1188, 1196 (11th Cir. 2002) (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 353-54 (2001)).  "The right to make an arrest 'necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'"  *Bashir v. Rockdale Cty., Ga.*, 445 F.3d 1323, 1332 (11th Cir. 2006) (quoting *Graham*, 490 U.S. at 396).  Plaintiff argues that under *Bashir*, "any force by Officers Cannella and Sabillon was excessive" because Cannella lacked probable cause to arrest Plaintiff.  ECF No. [71] at 11.  Plaintiff, however, misreads *Bashir*, as the *Bashir* Court *rejected* a similar argument and held that "where an excessive force claim is predicated . . . on allegations the arresting officer lacked the power to make an arrest, the excessive force claim is entirely derivative of, and is subsumed within, the *unlawful arrest* claim."  445 F.3d at 1332 (emphasis added).  Plaintiff does not bring an unlawful arrest claim against Officer Defendants, basing his Section 1983 causes of action solely on the force utilized and his subsequent prosecution.  *See* Second Amended Complaint.  Accordingly, Plaintiff cannot overcome Officer Defendants' qualified

immunity solely on the basis of the lawfulness (or lack thereof) of the arrest.  Whether Cannella had probable cause to arrest Plaintiff, however, is relevant to many of the issues presented in this case. As such, the Court addresses the matter.

Officer Defendants claim that Cannella had probable cause to stop and arrest Plaintiff because Plaintiff (1) did not fully stop at a stop sign; (2) fled and eluded Cannella before stopping at the gas station[3]; and (3) refused commands, punched Cannella, and generally resisted arrest.  *See* Officer Defendants' Motion at 6-7.  "The standard for determining whether probable cause exists is the same under Florida and federal law."  *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998).  "To show probable cause, the arresting officer must have had reasonable grounds to believe that the arrestee committed a crime."  *Lozman v. City of Riviera Beach*, 39 F. Supp. 3d 1392, 1409 (S.D. Fla. 2014).  "This standard is met when 'the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'"  *Rankin*, 133 F.3d at 1435 (quoting *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995)).

Cannella claims that he pulled Plaintiff over because Plaintiff failed to stop at a stop sign. Specifically, Cannella testified that "a vehicle came flying past me and made a left turn disobeying the stop sign . . . After I passed through it, he passed through the stop sign behind me to make a left turn south."  ECF No. [53-1] at 6:18-19, 21-22 ("Cannella Depo.").  Cannella's Incident Report similarly documents that "[t]he defendant disobeyed the stop sign at south 26th Avenue before executing a left turn (south) on south 26th Avenue," and that at the end of the incident, "the defendant was issued a uniform traffic citation to wit: disobey stop sign."  ECF

---

[3] The Court includes this argument because Officer Defendants have adopted the arguments made by City in its Motion for Summary Judgment.  *See* ECF No. [61].

No. [79-1] at 3, 5.  Cannella also testified during Plaintiff's criminal trial that he "noticed in [his] rear view mirror that the vehicle which was occupied by Mr. Manners accelerated from the swale it was parked in front of and pulled behind me and pulled through the stop sign without stopping before it made a left turn which was south on 26th Avenue."  ECF No. [69-1] at 29:5-9; *see id.* at 53:14-25–54:1-14; ECF No. [69-2] at 6:4-8, 7:24 ("Yes, I pulled him over for a stop sign violation.").  Plaintiff, however, claims that he stopped at the stop sign, and thus, that Cannella lacked probable cause to pull him over.  *See* ECF No. [52-1] at 40:13-14 ("Plaintiff's Depo.") ("I stopped at the stop sign.  I made a left, and I was going down -- south on 26th Avenue . . . ."); *see also* ECF No. [64-1] at 13:5-6 ("When I got to the stop sign, I stopped at the stop sign, proceeded to make a left southbound on 26th Avenue.").  Plaintiff does not contest that he was issued a traffic citation, but argues that consistent with *Kingsland v. City of Miami*, 382 F.3d 1220 (11th Cir. 2004), a material issue of fact exists regarding the basis for the traffic stop.  The Court disagrees.

Cannella has steadfastly stated that he witnessed Plaintiff drive through a stop sign without making a full stop.  Even taking Plaintiff's version of the facts as true and assuming that Cannella was mistaken in his observation, "a 'mistaken but reasonable [observation]'" is sufficient to establish the requisite probable cause to make an arrest.  *Kingsland*, 382 F.3d at 1233 (quoting *Post v. City of Fort Lauderdale*, 7 F.3d 1552 (11th Cir. 1993)); *see Draper v. Reynolds*, 369 F.3d 1270, 1276 (11th Cir. 2004) ("That the tag light was working to an unknown extent during daylight does not directly contradict Reynolds's position that the registration plate was not clearly legible from fifty feet away on the night of the stop and is insufficient to create a genuine issue of material fact in this record."); *see also Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (officers who reasonably but mistakenly conclude that probable cause exist are entitled to

immunity).  In this case, the street was dark and Cannella states that he observed Plaintiff through his rear-view mirror, circumstances Plaintiff does not challenge and that could have reasonably resulted in a mistaken observation.  Unlike in *Kingsland*, relied upon heavily by Plaintiff, the record does not contain evidence of "conduct [that] creates factual issues as to [Cannella's] honesty and credibility."  *Id.*  To the contrary, the record shows that Cannella consistently testified and documented that Plaintiff failed to fully stop at the stop sign, going so far as to issue a traffic citation even after the incident had escalated beyond a mere stop sign violation.  Plaintiff and his counsel's conclusory and unsubstantiated allegations constitute the only evidence in the record – circumstantial or otherwise – that Cannella fabricated the basis of the stop, and as such, the Court "need not entertain" the accusations.[4]  *Id.* at 1227 n.8 (citing *Cunningham v. Gates*, 229 F.3d 1271, 1291-92 (9th Cir. 2000) (dismissing plaintiffs' conclusory allegations of fabrication where the plaintiffs produced "not an iota of evidence" to suggest that the defendant officers fabricated evidence)).  A court may not employ "[h]indsight [to] determin[e] whether a prior arrest was made on probable cause," *Lozman*, 39 F. Supp. 3d at 1409, and "[a] driver is required to stop regardless of the lawfulness of the police decision to direct the vehicle to stop."  *DeRosa v. Rambosk*, 732 F. Supp. 2d 1285, 1295 (M.D. Fla. 2010), *aff'd in part sub nom. DeRosa v. Sheriff of Collier Cty., Florida*, 416 F. App'x 839 (11th Cir.

---

[4] Unlike the record in this case, the *Kingsland* plaintiff presented circumstantial evidence of officer falsification as follows: "(1) despite supposedly detecting an odor of cannabis, the officers chose not to conduct a search of Kingsland's vehicle, her person, or her passengers to corroborate their testimony; (2) the officers did not call in drug-sniffing dogs to confirm their suspicions of drug use; (3) no drugs were ever found or produced; (4) Kingsland tested negative for cannabis; (5) Kingsland's vehicle was not impounded as evidence, nor was her allegedly odoriferous clothing retained; (6) the defendants stated in their arrest affidavit that Kingsland ran the red light, allegedly without taking statements from available witnesses or from Kingsland herself; [ ] (7) the officers decided to charge Kingsland with DUI-cannabis rather than DUI-alcohol, and simultaneously destroy an initial arrest affidavit, only after she passed Breathalyzer tests; . . . [and] [8] the arrest affidavit makes no mention of a cannabis odor emanating from the truck."  382 F.3d at 1226-27.  No comparable circumstantial evidence exists in this case.

2011). Accordingly, no material issue of fact exists regarding the lawfulness of Plaintiff's arrest.[5] *See Lee*, 284 F.3d at 1196.

     b.  Excessive force

   Having determined that Cannella had probable cause to arrest Plaintiff, the Court moves to the issue of excessive force. While an officer may "use some degree of physical coercion or threat thereof to effect" an arrest, *Bashir*, 445 F.3d at 1332, determining the reasonableness of force used in a given case requires a careful balancing of the nature and quality of the intrusion on the individual's rights against government interests. *See Garner*, 471 U.S. at 8; *Crosby v. Paulk*, 187 F.3d 1339, 1351 (11th Cir. 1999). "[G]enerally no bright line exists for identifying when force is excessive." *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000). The use of force "must be judged on a case-by-case basis 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Post*, 7 F.3d at 1559 (quoting *Graham*, 490 U.S. at 394). "When making an arrest or stop, officers can use force that is 'necessary in the situation at hand' but they violate a constitutional right if they use excessive force." *Gomez v. Lozano*, 839 F. Supp. 2d 1309, 1317 (S.D. Fla. 2012) (Jordan, J.) (quoting *Lee*, 284 F.3d at 1197). While an officer's "subjective intent is irrelevant to the inquiry," an officer may not apply force that "exceed[s] the force a reasonable officer would believe is necessary under the circumstances." *Samarco*, 44 F. Supp. 2d at 1290 (citing *Graham* 490 U.S. at 397; *Hutton*, 919 F.2d at 1540); *Gomez*, 839 F. Supp. 2d at 1317 (citing *Penley v. Eslinger*, 605 F.3d

---

[5] As explained further below, Cannella later obtained probable cause to arrest Plaintiff, at a minimum, for resisting arrest and battery upon a police officer. *See Morris v. Town of Lexington Alabama*, 748 F.3d 1316, 1325 (11th Cir. 2014) ("once Morris punched Bradford, the officers had probable cause, or at the very least arguable probable cause, to believe that Morris had committed an assault. Therefore, the officers' arrest of Morris after he punched Bradford cannot be considered a violation of Morris's Fourth Amendment right not to be seized without probable cause."); *see also N.H. v. State*, 890 So. 2d 514, 517 (Fla. 3d DCA 2005) ("refusing to identify himself, refusing to sit and thus comport himself so that the officers could investigate and finally physically threatening them . . . is sufficient to support the finding" that defendant resisted an officer).

843, 849 (11th Cir. 2010)).  As counseled by the Supreme Court, a reasonableness determination requires a court to analyze the totality of the circumstances, including a consideration of (1) the severity of the crime; (2) whether the suspect poses an immediate threat; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight (hereinafter, "*Graham* test" or "*Graham* factors").  *See Graham*, 490 U.S. at 396.  A court should not apply these factors "with mathematical precision; rather, they must be evaluated within the context of how the seizure was carried out."  *Samarco*, 44 F. Supp. 2d at 1285 (citing *Ortega v. Schramm*, 922 F.2d 684, 695 (11th Cir. 1991); *see Buckley v. Haddock*, 292 F. App'x 791, 798 (11th Cir. 2008) ("The circumstances that call on police to use some intermediate force – between no force and deadly force – remain the cases where the law of excessive force is most ambiguous.").

The parties tell two competing narratives of the arrest.  As told by Defendants, after the vehicles stopped at the gas station, Plaintiff shouted at Cannella, exited his car, and refused to return to his vehicle despite multiple orders to do so.  *See* Officers' Facts at 18, 20, 22-23; Cannella Depo. at 9:19-22.  Cannella warned Plaintiff that he would be arrested if he did not return to his vehicle. After Plaintiff failed to comply, Cannella told Plaintiff to put his hands behind his back to be handcuffed.  *See* Officers' Facts at 24-25; Cannella Depo. at 10:19-20, 12:15-20.  Plaintiff refused and began to resist by "bracing and tensing his body."  Officers' Facts at 26.  Cannella attempted to place handcuffs on Plaintiff, but Plaintiff pulled away into his vehicle, requiring that Cannella "wrestle him onto his back in the front seat of his vehicle."  *Id.* at 29.  Plaintiff struck Cannella three or four times while in the vehicle, and after a few seconds, Cannella pulled Plaintiff out of the driver's-side door.  *See id.* 31-32; Cannella Depo. at 13:11-12.  Cannella brought Plaintiff to the ground in an attempt to handcuff him, but because Plaintiff resisted by stretching out his arms, Cannella punched him six or seven times.  *See* Officers' Facts

at 33, 35-37.  Plaintiff began to scream and punch Cannella, at one point, even grabbing Cannella

by the throat and choking him.  *See id.* at 38-39; Cannella Depo. at 15:22-25.  The parties

continued to struggle and Plaintiff continued to resist, managing to wrap his legs around

Cannella and grab hold of Cannella's wrists and arms.  *See* Officers' Facts at 42-44.  Cannella

states that he momentarily lost consciousness, and that throughout the incident, he feared for his

life.  *See* Cannella Depo. at 22:5-7, 21-22.  The struggle did not end until Sabillon arrived, at

which point Cannella "got up" from his "straddling position" atop Plaintiff, and Sabillon

deployed her Taser in stun mode.  *See* Officers' Facts at 45; Cannella Depo. at 17:7-8; ECF No.

[54-1] at 9:10-11 ("Sabillon Depo.").  Because Plaintiff continued to resist arrest, Sabillon and

Cannella deployed their Tasers three or four more times in the aggregate, and with the assistance

of additional officers, eventually handcuffed and arrested Plaintiff.  *See* Cannella Depo. at

17:17-25–18:1-6; Sabillon Depo. at 14:8-15, 16:3-25.

　　　Plaintiff tells a different story.  Pertinently, Plaintiff states that he never shouted at

Cannella, but rather, asked Cannella whether he could "hurry things up," to which Cannella

punched him in the face.  Plaintiff's Facts at 63, 65; *see* Plaintiff's Depo. at 41:20-22; 69:16-23

("Q: That was all that was said and then you were immediately punched? A: Yes ma'am. Q: All

right.  When you were immediately punched, what did you do next? A: I leaned back -- as he

was trying to -- he was trying to put -- he was telling me he was going to take me to jail.  I leaned

into the vehicle . . . ."), 70:25–71:1 ("I was already leaning back into the car.  When he punched

me, he was on top of me, punching me.").  According to Plaintiff, Cannella never told him to

return to his vehicle, and Plaintiff "complied with all of Officer Cannella's commands."

Plaintiff's Facts at 67.  During the struggle, Plaintiff threw out his arms, but did not brace his

body to resist Cannella's attempt to handcuff him, and at no point did Plaintiff "choke, strike, or

kick" Cannella or "resist Cannella's efforts to arrest him." *See id.* at 67, 68, 70; Plaintiff's Depo. at 442:6-7, 43:2 ("I never touched this guy.").   Plaintiff admits, however, that he grabbed Cannella's wrists.  *See id.* at 44.

If the record contained only this competing testimony, summary judgment on the basis of qualified immunity may be improper.  *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253-54 (11th Cir. 2013) ("As a general principle, a plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature." (citing *Scott v. Harris*, 550 U.S. 372, 380-81 (2007); *Holley Equip. Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1537 (11th Cir. 1987); and *United States v. Flores*, 572 F.3d 1254, 1263 (11th Cir. 2009))).   When, however, "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott*, 550 U.S. at 380.  In the Eleventh Circuit, "exhibits govern" when they contradict a plaintiff's general and conclusory allegations. *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009).  When videotape evidence contradicts a plaintiff's version of facts, a court properly views the facts "in the light depicted by the videotape."  *Scott*, 550 U.S. at 381.  Defendants in this case have produced an uncontested videotape that, while lacking audio, documents nearly the entire arrest.  *See* ECF No. [51]. A review of that video reflects the following:

- Cannella approaches Plaintiff's vehicle and speaks with Plaintiff while Plaintiff sits in the driver seat.  As Cannella looks into the back seat of Plaintiff's vehicle, Plaintiff exits his vehicle and stands next to Cannella.  *See* Video at 3:00:00-3:00.37.

- Plaintiff and Cannella speak face to face and Plaintiff's mannerisms convey dissatisfaction and frustration.  Plaintiff then stands to the side and Cannella further investigates the vehicle's front seat.  *See id.* at 3:00.37-3:00.57.

- Cannella speaks to and points at Plaintiff in a manner that upsets Plaintiff, and Plaintiff responds orally and gestures animatedly.  Plaintiff then reenters his vehicle. *See id.* at 3:00.57-3:01.01.

- Cannella reaches into the vehicle and grabs Plaintiff's arm in an apparent attempt to handcuff him.  Imperceptible movements occur inside the vehicle and, after a few seconds, Cannella pulls Plaintiff out by his head.  *See id.* at 3:01.01-3:01.19.

- Cannella places Plaintiff in a standing position such that Plaintiff's head is facing the ground, and Plaintiff spreads both arms out to either side.  Cannella flips Plaintiff to the ground, with Plaintiff landing on his back and Cannella atop Plaintiff's stomach. Cannella pushes his forearm across Plaintiff's face.  *See id.* at 3:01.19-3:01.23.

- Plaintiff pushes at Cannella two or three times, resulting in Cannella taking his forearm off Plaintiff's face.  Cannella punches Plaintiff in the head a number of times. Plaintiff has his arms braced between himself and Cannella, pressed against Cannella. *See id.* at 3:01.23-3:01.36.

- Cannella succeeds in flipping Plaintiff to his stomach and attempts to place handcuffs on Plaintiff.  Plaintiff resists, tensing and stretching his arms out towards the ground in fists.  Plaintiff then convulses, bringing his legs and arms around in an apparent attempt to lock Cannella.  The parties roll and Cannella punches Plaintiff in the head. *See id.* at 3:01.36-3:02.05.

- Having again rolled to his back, Plaintiff wraps his legs around Cannella and stretches his arm(s) into Cannella's face or upper body.  Cannella moves his body up and Plaintiff grabs a hold of Cannella's wrists.  The parties continue to struggle, with Plaintiff holding Cannella's wrists.  Plaintiff does not let go until Sabillon arrives, releasing his hold just before Sabillon discharges her Taser.  *See id.* at 3:02.05-3:02.44.

- With the officers close by and speaking to Plaintiff, Plaintiff roles towards Cannella, and a second struggle ensues between Sabillon, Cannella, and Plaintiff.  During this skirmish, both officers appear to attempt to place Plaintiff in handcuffs.  *See id.* at 3:02.44-3:03.45.

- After approximately one minute, many more officers arrive and swarm Plaintiff. A police dog also appears on leash approximately ten feet away from Plaintiff. Plaintiff is eventually handcuffed, laying on his back. The police officers disperse, and the police dog leaves. *See id.* at 3:03.45-3:04.47.

*See also* ECF No. [55-1] (still-frame photographs). As reflected above, the video materially contradicts large portions of Plaintiff's account, and supports many of the facts stated by Defendants. Rather than fully comply with Cannella, Plaintiff clearly behaves in a resistive, confrontational manner before Cannella attempts to place Plaintiff in handcuffs. By his own testimony, Plaintiff resisted Cannella's efforts to arrest him. *See, e.g.*, Plaintiff's Depo. at 71:25–72:1-2 ("He tried to restrain me. At that time, I pulled away, pulled back into the car and asked him what he was doing").[6] At no point prior to entering the vehicle does Cannella punch Plaintiff in the face. Plaintiff appears to brace his body and move inside the vehicle, making it difficult for Cannella to handcuff him, but the remaining struggle is indiscernible. Once the scuffle begins and the men are on the ground, Plaintiff clearly pushes at Cannella's face or upper body, squeezes Cannella with his legs and arms, and generally resists Cannella's efforts to handcuff him, for over three minutes. At a minimum, this contradicts Plaintiff's statement that he "did not put a hand on any officers." Plaintiff's Depo. at 73:4; *see id.* at 94:5 ("I did not touch or strike any officers.").

Under these circumstance and applying the *Graham* factors, Officer Defendants applied a reasonable degree of force to effectuate Plaintiff's arrest. While the video does not depict the words uttered or their tone, Plaintiff clearly behaves in a hostile manner prior to Cannella's attempt to handcuff him. When Cannella attempts to handcuff Plaintiff, Plaintiff resists, and continues to resist for over three minutes, retreating into his car, pushing Cannella, outstretching

---

[6] Plaintiff further testified that Cannella told Plaintiff that he was going to jail, and that when Cannella went to grab Plaintiff's arm, Plaintiff retreated into his car. *See* Plaintiff's Depo. at 72:3-11.

his arms, rolling on the ground, wrapping his legs, and holding Cannella's wrists.  Plaintiff does

not stop holding Cannella until Sabillon arrives.  Plaintiff's frustration notwithstanding, under

Florida law, when a police officer attempts to effectuate an actual arrest, "[a] person is not

justified in the use or threatened use of force to resist . . . if the law enforcement officer was

acting in good faith."  Fla. Stat. Ann. § 776.051(1); *see Tillman v. State*, 934 So. 2d 1263, 1270

(Fla. 2006); *see also Fernandez v. City of Cooper City*, 207 F. Supp. 2d 1371, 1378 (S.D. Fla.

2002).   Under Eleventh Circuit precedent, Cannella was entitled to use a "degree of physical

coercion or threat thereof to effect" the arrest.  *Bashir*, 445 F.3d at 1332.   While Cannella

initially stopped Plaintiff based on a traffic violation, Cannella did not "exceed the force a

reasonable officer would believe is necessary under the circumstances" that transpired.  *Gomez*,

839 F. Supp. 2d at 1317.  After Cannella and Plaintiff fell to the ground, Plaintiff clearly resisted

physically, resulting in initial charges for attempted homicide, resisting arrest with violence, and

battery on a law enforcement officer, all severe crimes under the *Graham* test.[7]  As to the second

*Graham* factor, the Eleventh Circuit has explained that it "can be reduced to a single question:

'whether, given the circumstances, [the suspect] would have appeared to reasonable police

officers to have been gravely dangerous.'"  *Penley*, 605 F.3d at 851 (alternations in the original)

(quoting *Pace v. Capobianco*, 283 F.3d 1275, 1281 (11th Cir. 2002)).  Here, Cannella struggled

by himself with a larger individual, who, by his own testimony, actively resisted Cannella's

efforts.  *See, e.g.*, Plaintiff's Depo. at 71:25–72:1-2, 81:3-10, 85:1-4.  At the time, Cannella had

yet to even run a background check on Plaintiff.  Under these circumstances, the Court believes

that a "reasonable officer on the scene" could have concluded that Plaintiff posed an immediate

---

[7] The fact that Plaintiff was not ultimately charged or convicted of certain of these crimes does not affect this analysis.  *See Lee*, 284 F.3d at 1195-96 ("'[t]he validity of an arrest does not turn on the offense announced by the officer at the time of the arrest.'" (quoting *Bailey v. Bd. of Cty. Comm'rs of Alachua Cty., Fla.*, 956 F.2d 1112, 1119 n.4 (11th Cir. 1992) in turn, quoting *United States v. Saunders*, 476 F.2d 5, 7 (5th Cir.1973) and citing *State v. Cote*, 547 So. 2d 993, 996 (Fla. 4th DCA 1989)).

threat, and that the force Cannella used – punching Plaintiff – was necessary.  *Post*, 7 F.3d at 1559 (quoting *Graham*, 490 U.S. at 394).  "The government has a weighty interest in protecting members of the public and police officers from the threat of force," and use of even severe force does not violate the Constitution "where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others."  *Penley*, 605 F.3d at 851 (internal citations and quotations omitted).  The video shows that Cannella could have reasonably believed that Plaintiff posed such a threat.  The Court also finds that the third *Graham* factor favors Officer Defendants, as Plaintiff was actively resisting arrest.

Regarding the use of Tasers after Sabillon arrived on the scene, the Court finds that Officer Defendants' use did not violate Plaintiff's constitutionally established rights.  Prior to the incident in question, the Eleventh Circuit held that a Taser's use against a suspect who is resisting arrest, even three times, does not constitute excessive force.  *See Hoyt v. Cooks*, 672 F.3d 972, 980 (11th Cir. 2012); *Floyd v. Corder*, 426 F. App'x 790, 792 (11th Cir. 2011); *see also Fils v. City of Aventura*, 647 F.3d 1272, 1289 (11th Cir. 2011) ("Of course, the use of tasers or other weapons does not violate the Fourth Amendment *per se*.  Such force could be appropriate where an officer reasonably believes the suspect is violent.").  In fact, the Eleventh Circuit has found an officer's use of a Taser "reasonably proportionate to the difficult, tense and uncertain situation" faced during a traffic stop in which a suspect acted in a "hostile, belligerent, and uncooperative" manner, even though "(1) the suspect was not armed, (2) was not attempting to flee, and (3) there was no violence or report of violence concerning the suspect."  *Floyd*, 426 F. App'x at 792 (quoting and describing the facts of *Draper*, 369 F.3d at 1272-74, 1278).  In this case, Plaintiff did not stop holding Cannella's wrists until just before Sabillon applies her Taser.  Plaintiff then *continued* to resist both officers' attempts to handcuff him.  Under these

circumstances, recognizing that "police officers make split-second decisions . . . in tough, tense situations," *Gomez*, 839 F. Supp. 2d at 1317, and cognizant of "the context of how the seizure was carried out," *Samarco*, 44 F. Supp. 2d at 1285, the Court finds that Cannella and Sabillon used an amount of force reasonably "'necessary in the situation at hand.'" *Gomez*, 839 F. Supp. 2d at 1317 (quoting *Lee*, 284 F.3d at 1197); *see Zivojinovich v. Barner*, 525 F.3d 1059, 1073 (11th Cir. 2008); *see also Nolin v. Isbell*, 207 F.3d 1253, 1255 (11th Cir. 2000) ("qualified immunity applies unless application of the standard would inevitably lead every reasonable officer in the position of the defendant officer to conclude the force was unlawful." (internal alteration and quotations omitted)). Accordingly, the Court finds that Plaintiff has failed to establish that Officer Defendants used excessive force such that they violated a clearly established constitutional right. *See Holloman*, 370 F.3d at 1267. Officer Defendants are entitled to qualified immunity as to Counts I and II of the Second Amended Complaint.

### B.    Malicious Prosecution and False Arrest

Having largely rejected Plaintiff's version of events and conclusory allegations due to the video recording and other uncontested record evidence, the Court quickly dispenses with Plaintiff's remaining claims. "To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of [his] Fourth Amendment right to be free from unreasonable seizures." *Kingsland*, 382 F.3d at 1234 (citing *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003), *cert. denied*, 540 U.S. 879 (2003)). However, "the existence of probable cause defeats a § 1983 malicious prosecution claim." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256 (11th Cir. 2010). "To receive qualified immunity, an officer need not have actual probable cause, but only 'arguable probable cause,'" which "exists where 'reasonable officers in the same circumstances and

possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff.'" *Id.* at 1257 (quoting *Kingsland*, 382 F.3d at 1232). In this case, the uncontroverted record shows that Cannella believed Plaintiff had failed to stop at the stop sign. The video evidence additionally shows that Plaintiff resisted arrest, and that Plaintiff arguably battered Cannella. Accordingly, Cannella had sufficient probable cause to arrest Plaintiff and the Court grants summary judgment in Cannella's favor as to Count IV of the Second Amended Complaint. For the same reason, the Court grants City's Motion as to Count V, Plaintiff's sole claim for false arrest.[8] *See Bolanos v. Metro. Dade Cty.*, 677 So. 2d 1005, 1005 (Fla. 3d DCA 1996) ("Since probable cause is a complete bar to an action for false arrest and false imprisonment, summary judgment was properly entered in the County's favor." (citing *White v. Miami Home Milk Prods. Ass'n*, 143 Fla. 518 (1940); *Metropolitan Dade County v. Norton*, 543 So. 2d 1301 (Fla. 3d DCA), *rev. denied*, 551 So. 2d 462 (Fla. 1989); and *Rothstein v. Jackson's, Inc.*, 133 So. 2d 331 (Fla. 3d DCA 1961))).

## IV.    CONCLUSION

For the reasons stated herein, it is **ORDERED AND ADJUDGED** as follows:

1. Officer Defendants' Motion for Summary Judgment, **ECF No. [58]**, is **GRANTED**;

2. City's Motion for Summary Judgment, **ECF No. [60]**, is **GRANTED**;

3. Plaintiff's Motion in Limine, **ECF No. [59]**, is **DENIED** as moot. All outstanding motions are **DENIED** as moot;

4. The Clerk shall administratively **CLOSE** the case.

5. Final Judgment will be entered by separate order.

---

[8] Because the Court finds that probable cause and/or arguable probable cause existed to arrest Plaintiff for a traffic violation and for resisting arrest, the Court does not analyze City's additional argument based on Fla. Stat. § 316.1935, and does address Plaintiff's constitutional challenge.

      **DONE AND ORDERED** in Miami, Florida this 25th day of October, 2016.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record